# Johnson *versus* Hulings

1. A., whose business was the buying and selling of real estate for others upon commission, negotiated a sale of real estate for B., for which A. was by special agreement to receive $10,000. For the year in which said sale was negotiated A. had no license as a real estate broker. In an action by A., against B., to recover the $10,000, the jury found a special verdict subject to the question reserved, whether, upon the above stated facts, the plaintiff was entitled to recover. *Held*, that A. was not entitled to recover.

2. Whenever it appears on the trial of an action of assumpsit (whether in the plaintiff's case in chief, or upon cross-examination, or by way of defense, under the plea of non assumpsit) that the plaintiff's claim rests upon an illegal foundation the court will not lend its aid to enforce it. Where, however, the illegal transaction is not involved in the case trying, but in a matter distinct and collateral, a recovery may be had.

May 8th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

[Johnson v. Hulings.]

ERROR to the Court of Common Pleas of *McKean county:* Of January Term 1883, No. 256.

Assumpsit, by J. T. Johnson against Marcus Hulings. The narr. was in the common counts, and under a rule to file a bill of particulars, plaintiff filed the following paper :

J. T. Johnson being duly sworn saith that on or about the months of April or May, A. D. 1878, at the Collins House, Oil City, Pa., Marcus Hulings agreed with deponent that he would pay him the sum of ten thousand dollars if he would find him a purchaser for one-half his interest in about 6,000 acres of land with a drilling well thereon in McKean county, Pa., at $70,000. Subsequently, about July 1878, he raised the price to $175,000, and afterwards authorized deponent to sell or find a purchaser. In pursuance of this agreement, deponent called the attention of H. L. Taylor and John L. McKinney, of the Union Oil Company, to said property, and they negotiated for some time with Hulings for its purchase. Finally they completed the purchase of the interest through J. M. Guffey. Deponent is informed that the contract of sale was nominally made with said J. M. Guffey, but the purchase was in fact made for said H. L. Taylor and John L. McKinney and others, Guffey retaining but a small interest therein, to wit (one-eighth), and deponent avers that said sale was brought about directly by his efforts and introducing the property to the purchasers, and if the contract was made with J. M. Guffey nominally, it was in fact a purchase for the benefit of H. L. Taylor, John L. M'Kinney and others, and so distinctly understood and agreed upon between Guffey and said parties before it was made.          J. T. JOHNSON.

On the trial, before WILLIAMS, P. J., the plaintiff testified, in chief, that his business was the buying and selling real estate for other parties. He admitted, on cross-examination, that in 1878 he had no license as real estate broker.

The jury found the following special verdict :

" We find in favor of the plaintiff the sum of twelve thousand three hundred dollars, subject to the opinion of the court, upon the following question, viz : Plaintiff was in 1878 and for some years before and after in the business of buying and selling real estate for others upon commission. In 1878 he had no license as a real estate broker. During that year he negotiated a sale of real estate for the defendant to H. L. Taylor & Co. for which he was to receive ten thousand dollars. If the court be of opinion that his failure to obtain a license as a broker is a bar to his recovery, then we find for the defendant, otherwise for the plaintiff, as above stated."

The court afterwards entered judgment upon the reserved point in favor of the defendant, non obstante veredicto. The

[Johnson *v.* Hulings.]

plaintiff took this writ of error, assigning for error the said judgment.

*N. B. Smiley* and *M. F. Elliott,* for the plaintiff in error. —The plaintiff does not claim commission as a broker, or as a real estate broker, or because he was engaged in buying and selling for others. But he does claim to recover a specific sum as compensation for services performed under a special contract. The test whether a demand connected with an illegal transaction is capable of being enforced at law is whether the plaintiff requires the aid of the illegal transaction to establish his case: Swan *v.* Scott, 11 S. & R. 164. Clearly in this case the plaintiff did not require such aid. To recover a compensation previously agreed upon for procuring the sale of real estate it is not necessary for the plaintiff to show he is a licensed real estate broker: Shepler *v.* Scott, 4 Nor. 329. When the plaintiff has made out his case without calling the illegal transaction to his aid, the defendant who has enjoyed its benefits cannot set up its illegality as a defence: Wright *v.* Antwerp Pipe Co., 12 Weekly Notes 325.

*W. B. Chapman* and *John B. Chapman,* for the defendant in error.—That the plaintiff was engaged in the business of real estate brokerage is clear from the evidence and the finding of the jury. The attempt to maintain an action to recover his commission for services as a broker, without having taken out a license as a real estate broker is in violation of Act of April 10th 1849, § 18. A real estate broker is one who engages in the purchase or sale of real estate as a business or occupation: Chadwick *v.* Collins, 2 Casey 138. A real estate broker who has not taken out a license as required by the Act of April 10th 1849, is not entitled to commission: Holt *v.* Green, 23 Sm. 198 ; Costello *v.* Goldbeck, 9 Phila. 159. A contract in violation of a statute is absolutely void : Thorne *v.* Travellers' Ins. Co., 30 Sm. 15 ; Scott *v.* Duffy, 2 Harris 20 ; Thomas *v.* Brady, 10 Barr 170 ; Mitchell *v.* Smith, 1 Binney 110. In Swan *v.* Scott, 11 S. & R. 164, and Wright *v.* Pipe Co., 12 W. N. C. 325, cited on the other side, the illegal act was held to be a good consideration for a new promise, on which an action was maintainable. But here the plaintiff is not within that rule, for he seeks to recover on the original illegal contract.

Mr. Justice Gordon delivered the opinion of the court, May 25th 1883.

In this case, by a special verdict, the jury found that the plaintiff was, in the year 1878, the year of the transaction involved in this controversy, and also for some years before and after that period, engaged in the business of buying and selling

real estate for others upon commission.  That in that year he had no license or commission as a real estate broker, and that it was during this time that he negotiated a sale of real estate to H. L. Taylor and company for the defendant for which he was to receive $10,000.  On looking over the evidence we find that this verdict was founded upon the testimony of the plaintiff himself.  In answer to the question, "What is your business?" he answered, "I am buying and selling oil lands for other parties, and real estate."  He also said he had been engaged in that business about eight years.  He further, in answer to a question put on part of the defence, admitted that he had not taken out license for the year 1878.  There is therefore no doubt but that the plaintiff was engaged in the purchase and sale of real estate as a business, and so came within the definition of "real estate broker," as found in the case of Chadwick v. Collins, 2 Ca. 138.  Such being the case, the plaintiff was, by virtue of the 18th section of the Act of the 10th of April 1849, brought within the provisions of the Act of May 27th 1841, and was subject to the penalty therein prescribed in case of a violation of those provisions.  The result follows that Johnson, in the transaction in hand, stands in the position of a real estate broker who seeks to enforce a contract which, under the statute, he had no right to make, and by the making of which he subjected himself to the penalty imposed by that statute.  But a contract such as this, opposed as it is alike to good morals and public policy, cannot be enforced.  That has been ruled times without number.  The case is almost identical with that of Holt v. Green, 23 P. F. S. 198.  That, like this, was an action by a broker to recover his commissions, and there, as here, it appeared on cross-examination that he had no license The only difference between the two cases is, that in the one cited the demand was for commissions quantum meruit, and in the case in hand it is on a special contract.  This, however, may be regarded as a distinction without a difference, for we suppose no one will contend that the statute may be avoided by the introduction of a special contract for commissions.  The statute deals not with the question of compensation, for that is left to the agreement of the parties interested, but with the business itself.  "No individual or copartnership, other than those duly commissioned under the provisions of this Act, shall use or exercise the business or occupation of a stock broker, or an exchange broker, or a bill broker, under a penalty of $500 for each and every offence, to be recovered as debts are by law recoverable, one-half for the use of the Commonwealth, and the other half for the use of the guardians of the poor, in the city or county where such offence shall have been committed."

If then the business itself be unlawful, the commissions or

[Johnson *v.* Hulings.]

gains arising from it without regard to the form of the contract for their payment are also unlawful.

But the plaintiff's main contention is, that as the transaction took the shape of a special contract, and as under his narr. and proof, he might have recovered without a revelation of the illegal character of that contract, therefore, and notwithstanding its true nature was revealed by cross-examination, he was entitled to recover. It might be enough to answer that in this he is met in the teeth by the case above cited. It was not necessary to the plaintiff's recovery in that case, that he should have proved that he had license, for that might have been presumed, but the fact that he had not license appeared on cross-examination, hence he lost his case. Nor does Shepler *v.* Scott, 4 Nor. 329, sustain the point made by the plaintiff, for there not only was the action on a special contract, but it nowhere appeared that the plaintiff was a broker, or that he had not been licensed. Again, the rule laid down in Swan *v.* Scott, 11 S. & R. 155, is cited as conclusive of this case. It was there said, as has been said in many succeeding cases, that the test whether a demand connected with an illegal transaction, can be enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. About this rule there is no special obscurity, and if there were any such obscurity, it may be readily made clear by an examination of the case itself. The plaintiff, Scott, obtained an award of arbitrators against Swan, founded on an illegal lottery transaction, from which Swan appealed. He afterwards withdrew the appeal, and, on the same day, executed to Scott his bond for the amount of the award, and thereupon Scott entered satisfaction of record. Then, in a suit brought upon the bond it was held, that the defendant could not go beyond that obligation to show that the foundation of the preceeding award was an illegal transaction. The argument of Mr. Justice Duncan on this point is unanswerable. "If," says the learned justice, "Swan had acquiesced in this award for twenty days, the judgment would have been final; but the judgment remained notwithstanding the appeal, and when it was withdrawn Scott might have issued his execution; the judgment became final, and I may add, irreversible; it fixed both parties; there was an end of the controversy." The consideration of the bond was the award, which had, by the agreement of the parties, passed into a judgment, and that judgment could not be attacked collaterally, hence there was no way by which the original transaction could he reached. But how does all this fit the case in hand? Johnson has no intervening judgment behind which to shelter his illegal claim; he has not so much as a bond or note; he stands upon the illegal contract alone, and asks us to say that because in his narr. and case in chief he has

[Johnson v. Hulings.]

had the ingenuity to avoid an exposition of its illegality, that illegality cannot be shown by way of defence. We have but to say, that if such is his reading of the rule of Swan v. Scott, he is badly mistaken in the legal principle thereby announced. Moreover, if his interpretation of the rule be correct, then has this court departed from it in many recent cases; as in the Morris Run Coal Co. v. The Barclay Coal Co., 18 P. F. S. 174; Kilborn v. Field, 28 Id. 194; Thorne v. The Insurance Co., 30 Id. 15; Holt v. Green, supra, and Ham v. Smith, 6 Nor. 63. And if these cases were wanting of support they might readily be duplicated from the reports of the supreme federal court. From these, however, we select but two cases, and that because of the manner in which they elucidate the doctrine under discussion. Craig et al. v. The State of Missouri, 4 Pet. 410, was an action of assumpsit on a promissory note, and neither party having required a jury, the case was submitted to the court, which, on hearing the evidence, found that the defendants did assume as the plaintiff had declared, and that the consideration for the note and the assumpsit was for loan office certificates loaned by the state of Missouri at her loan office in Chariton. Under this finding by the court below, it was held in the supreme court, that under the plea of non-assumpsit, the defendants were at liberty to question the validity of the consideration which was the foundation of the contract, and the constitutionality of the law in which it originated. Now, it will be observed, from the statement of this case, that the right of the defendant to attack the note through the illegality of the original contract on which it was based, was made to depend, not on what the plaintiff might happen to show, but upon the character of the pleadings. In other words, the defendant might raise the question of the validity of the contract as he might raise any other defence. In discussing this point, Chief Justice MARSHALL says: "Neither can it be doubted that the plea of non-assumpsit allowed the defendants to draw into question at the trial the validity of the consideration on which the note was given. Everything which disaffirms the contract, everything which shows it to be void, may be given in evidence on the general issue in an action of assumpsit; the defendants therefore, were at liberty to question the validity of the consideration which was the foundation of the contract, and the constitutionality of the law in which it originated."

It will here be seen that the doctrine thus stated goes one step beyond what is required to sustain the ruling of the court below in the case in hand, for the defense was permitted to pass over the note and attack the contract in which it originated. Here, however, all that has been done has been to show the unlawful character of the very transaction on which the suit is

[Taylor *v.* Hanlon.]

founded. Again, we have in Armstrong *v.* Toler, 11 Wheat. 258, a statement by the same eminent authority of the rule of law governing illegal and immoral contracts, which is correctly abbreviated in the syllabus of that case as follows: "Where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. So if the contract be in part only connected with the illegal consideration, and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it." Where, however, the promise or undertaking on which suit is brought is not connected with the illegal contract, the rule is different. As in the case put by Lord Mansfield in Faikney *v.* Reynous, 4 Burr. 2069, if one person pay the debt of another at his request, an action may be sustained to recover the money, although the original contract was unlawful, and though the person who paid the money knew that it was paid in discharge of a debt not recoverable at law. All these cases tend to elucidate the rule as stated in Swan and Scott, and determine beyond controversy that whenever it is made to appear during the trial of a case that the plaintiff's claim rests upon an illegal foundation, the court will not lend its aid to enforce it. On the other hand, where the illegal transaction is not involved in the case trying, but in a matter distinct and collateral a recovery may be had.

We are therefore brought to the conclusion that the court below committed no error in directing judgment to be entered on the special verdict for the defendant.

The judgment is affirmed.