Kenyon *v.* Bloeser et al., Appellants.

26

Argued April 14, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Elmer D. Loose,* and with him *Charles F. Haughney,* for appellants.—Plaintiff was a real estate broker

as defined by the Act of May 7, 1907, P. L. 175; Phifer v. Seib, 10 Erie Co. Law Jr. 282; Young v. Union Trust Company of Erie, 8 Erie Co. Law Jr. 160.

*Charles A. Mertens,* and with him *Charles A. Mertens, Jr.,* for appellee.—Plaintiff was not required to have a broker's license: Chadwick v. Collins, 26 Pa. 138; Woods v. Heron, 229 Pa. 625; Raeder v. Butler, 19 Pa. Superior Ct. 604; Webb v. Rachmil, 75 Pa. Superior Ct. 193.

OPINION BY CUNNINGHAM, J., July 10, 1930:

During the lifetime of William Bloeser, Harry M. Kenyon, plaintiff below and appellee herein, brought an action of assumpsit against him to recover $1,240 as commission for making a sale of certain real estate. Upon the death of Bloeser, prior to the trial, his executors, the present appellants, were substituted on the record; the case came on for trial and resulted in a verdict for plaintiff. Defendants' motion for judgment in their favor n. o. v., based upon their point for binding instructions, was denied by the court in banc and they have appealed from the judgment entered on the verdict, assigning for error the refusal of their point and denial of their motion. The material averments of the statement of claim were to the effect that on March 1, 1927, Bloeser employed Kenyon "to make a sale" of an improved lot on the north side of 12th Street in the City of Erie, and agreed to pay the commission usual and customary in that city on the selling price (five per cent. on the first $8,000 and three per cent. upon the balance); that plaintiff secured as a purchaser G. Daniel Baldwin (a builder and an operator in real estate) at a price of $36,000; and that under date of April 13, 1927, Bloeser and Baldwin entered into a written agreement for the sale by Bloeser and the purchase by Baldwin of the property. In view of the conclusion we have reached the

provisions of the agreement need not be detailed. It is sufficient to state that the consideration was to be paid partly in cash, the assumption by Baldwin of a mortgage on the property, the conveyance by him to Bloeser of two properties and the assignment of "two certain bonds and mortgages" owned by Baldwin.

The affidavit of defense admitted the employment of plaintiff and the execution of the contract with Baldwin but averred that the agreement was unenforceable by reason of the uncertainty of its provisions and particularly because the two bonds and mortgages "are not described with sufficient certainty to identify them." Under the head of "new matter" it was averred that plaintiff, upon the date of his employment and at the time of the execution of the contract, and for many years prior thereto, had been, and still was, engaged in the employment and business of a real estate broker on a commission basis, but had not paid the tax and had not procured a license for the year covering the transactions here involved. Plaintiff's reply to the "new matter" was that he had been engaged in the business. of a real estate broker prior to March 1, 1926, but on that date disposed of his office furniture and equipment and had not since engaged in that business. It was admitted of record that at the time the commission is alleged to have been earned plaintiff was not the holder of a license under the Act of May 7, 1907, P. L. 175, defining real estate brokers and agents and imposing a license tax upon them. Baldwin attempted to compel specific performance of the agreement, but Bloeser successfully demurred to the bill upon the ground of uncertainty of consideration.

The fundamental question in this case is whether plaintiff was a real estate broker within the intendment of the Act of 1907. If he was, the other questions argued in appellants' brief become unimportant.

They contest his right to recover upon two additional grounds: (a) because his contract was "to make a sale," and not merely procure a purchaser, but he only succeeded in bringing about the execution of an unenforceable agreement; and (b) because he was representing Baldwin as well as Bloeser in the negotiations although he was not to receive any commission from the former. Moreover, the second of these questions was not raised in the pleadings, or at the trial, and therefore could not be considered here: McLaughlin v. Monaghan, 290 Pa. 74, 79.

The general effect of the charge was an instruction that plaintiff was entitled to recover unless the jury found that at the time he negotiated the transaction "he was actually a real estate broker and did not have a license." The question whether he was a real estate broker was submitted to the jury. Ordinarily a question of this kind would be for the jury (Raeder v. Butler, 19 Pa. Superior Ct. 604, 609; Meyer v. Wiest, 250 Pa. 573; Webb v. Rachmil, 75 Pa. Superior Ct. 193) but appellants contend that, viewing the testimony in the light most favorable to plaintiff, it discloses so clearly that he was engaged in the business of a real estate broker that their point for binding instructions should have been affirmed. The act contains this definition: "Real estate brokers and agents are those who buy, sell, or rent real estate, or collect rent therefrom, or negotiate loans upon real estate security, for a commission or other compensation." For such persons, the procuring of a license is a condition precedent to the lawful transaction of business and consequently to the recovery of compensation for services rendered: Johnson v. Hulings, 103 Pa. 498; Luce v. Cook, 227 Pa. 224. On the other hand the act does not prohibit a person whose business is not that of a broker from receiving compensation for services rendered in single transactions of buying or selling

real estate for another: Meyer v. Wiest, supra; Webb v. Rachmil, supra; Chadwick v. Collins, 26 Pa. 138.

There is here no conflict in the testimony upon this question. It consists of uncontradicted proof of other sales upon commission by plaintiff, subsequent to the date upon which he avers he discontinued the business of a real estate broker, his undenied declarations and his own testimony when called by defendants, as for cross-examination. There was evidence that he procured the execution of a contract of sale between other parties on December 17, 1926; that in September, 1927, he acted as broker in a real estate transaction and received a commission of $1,000; that about a month after closing his office he stated to a witness that "from that on he was doing business on the street; that he got better business by going out and finding folks than he could to sit in his office and let them come to him."

Again, a son of appellants' decedent testified he was present at the time his father employed plaintiff to sell the property and when his father asked plaintiff where his office was plaintiff replied, "I have no office. I do business out on the street. I am one of the biggest real estate men in the town." Plaintiff himself testified that he began the real estate business on his own account in Erie in 1916 and conducted the same up to March 1, 1926, when he "quit the regular brokerage business." A portion of his testimony continues: "Q. And then from March 1, 1926, you didn't have any office here in Erie? A. No. Q. Were you buying or selling any property for any clients? A. I was working out of Mr. Baldwin's office, selling property for him, and then I had an agreement with him, occasionally I could sell one on the side if I could make a little deal that way. Q. How were you paid by Mr. Baldwin? A. On a commission basis on cash sales. Q. In other words, you had no regular employment with Mr. Baldwin except such employment as you

could sell property for him on a commission basis? A. Yes, sir, on a commission basis. Q. You were not a clerk in the office? A. No, sir. Q. You had nothing to do with the rest of his business at all? A. No, sir.''

Another material portion of his testimony reads: ''Q. Mr. Baldwin was one of your steady clients? A. No, if I sold something I got the customary commission on any cash deal, but on any trade deals I got nothing from him. Q. You were acting as a broker for Mr. Baldwin as well as whoever you could get to buy and sell property for? A. I was working as a salesman. Q. You were in a position as a broker for Mr. Baldwin? A. No, I was acting as a salesman. Q. And during all that time you were securing whatever business you could? A. I suppose I could have got more if I hadn't been working on stuff up there.''

Baldwin, after corroborating plaintiff's statement relative to his employment, testified: ''Q. How long did he continue in that employ? A. He still does the same thing. Q. In his capacity as salesman for you what, if any, right did you give him to sell property for other people if he desired? A. All the rights.'' Under examination by his counsel, plaintiff stated that he gave up his office because he could not afford to maintain it; that he had not advertised any properties in newspapers or by placing signs thereon; and that the principal source of his income in 1926 had been the commissions paid him by Baldwin but that he had sold four or five properties each year for others. Upon further cross-examination, he said that he could not state how many people he solicited for business since closing his office; admitted negotiating an outside deal, involving a consideration of approximately $100,000, but denied that he was paid ''the regular commission;'' and continued as follows: ''Q. Before that, what other brokerage business did you do? That was in December, 1926, if you will recall? A. I don't remember. Q. You were soliciting busi-

ness wherever you could find it? A. Certainly, you have to solicit it to get it. Q. You were holding yourself out to people that you were in the real estate business or brokerage business? A. Not necessarily. Q. Did you ever refuse in any single instance to handle any property outside of the work you did in Baldwin's office? A. Yes, sir, I solicited properties if they were all right. Q. You went on soliciting property with the idea of selling them and making a commission out of it? A. Yes, sir. Q. You had no other business? A. Yes, sir, I worked out of Baldwin's office.''

We agree with the court below that a real estate broker, within the meaning of the act, is one who engages in buying, selling or renting real estate, for a commission, or other compensation, as an occupation in which he engages as a business, though not necessarily his sole business. The maintenance of an office and advertising his business to the public in any particular manner are not essential; at most, such acts are only evidence tending to show that one is engaged in the business. There may be other, and more conclusive, evidence of the fact; for instance, the devoting of time and effort to soliciting business, the actual negotiation of sales and exchanges, the collection of commissions, etc. The persons not required to have a license in order to enforce collection of commissions for sales of real estate are those who have some other bona fide business and merely act in a single, incidental transaction under a special contract for a commission. What was plaintiff's business? His own testimony supplies the answer with unmistakable clearness—buying and selling real estate, upon a commission, for Baldwin and any other persons whom he could induce by active solicitation to permit him to act for them. He had no other business or means of livelihood and devoted his entire time and all his efforts to this occupation. The negotiation of the

agreement for which he now claims a commission was not an isolated transaction, incidental to some other occupation, but one in the direct course of the only business in which he has been engaged for many years. The fact that he described himself in his testimony as a "salesman" for Baldwin does not minimize in any degree the force of his testimony as a whole. The material inquiry is what he did; not what he called himself.

As the essential facts upon this branch of the case were entirely free from dispute or contradiction, we think the question became one of law for the court—the application of the provisions of the act to the facts—and, as they clearly brought the plaintiff within its provisions, the defendants' point for binding instructions should have been affirmed, or their motion for judgment n. o. v. granted. "The true rule seems to be: 'that where the facts are simple and the evidence by which they are presented is involved in no uncertainty, their legal value is for the court to determine; but where the evidence is conflicting or the facts are left in doubt, the conclusions are to be drawn by the jury': Davidson v. Lake Shore & Mich. Southern Ry. Co., 171 Pa. 522": Wolf v. Phila. Rapid Transit Co., 252 Pa. 448, 450. We accordingly sustain the first and second assignments.

The judgment for plaintiff is reversed and is here entered for defendants.