## F. F. Bollinger Company *v.* Widmann Brewing Corporation, Appellant.

Argued March 26, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*J. C. Davies,* for appellant.

*Clyde A. Armstrong,* of *Thorp, Bostwick, Reed & Armstrong,* with him *James A. Bell* and *Graham, Yost & Meyers,* for appellee.

OPINION BY MR. JUSTICE BARNES, June 24, 1940:

The sole question upon this appeal is whether the violation by the plaintiff corporation of the Acts of Assembly relating to the practice of architecture and of engineering should deprive it of compensation for architectural and engineering services rendered to the defendant.

The F. F. Bollinger Company was incorporated under the laws of this State and specializes in the designing, construction and rehabilitation of breweries. Its president, F. F. Bollinger, has been engaged in that business for many years. On June 1, 1933, the defendant accepted the proposal of the plaintiff corporation to prepare plans and specifications for the rehabilitation of the defendant's brewery buildings at Conemaugh, in Cambria County. It was agreed that the plaintiff should be paid a fee of five per cent of the full cost of such rehabilitation, one-half payable upon completion of the plans and specifications, and the balance when the construction was completed and the brewery ready for operation.

On August 14, 1933, the completed plans and specifications were tendered to the defendant, but the latter was unable to make the payment agreed upon and endeavored to persuade the plaintiff to extend credit. The plaintiff finally permitted the defendant to use some of the drawings upon the payment of $500 on account, to assist it in obtaining necessary financing for the project. In these efforts, however, the defendant was unsuccessful and the brewery has not been made ready for operation. For more than a year the plaintiff's demands for payment were ignored, but on August 17, 1934, the defendant promised to meet them "as soon as possible."

In this action of assumpsit the plaintiff claims the sum of $3,250, which is one-half of five per cent of the estimated cost of rehabilitation of $150,000, less $500 paid on account. The defendant filed an affidavit of defense alleging that the plans were not completed with-

in the time fixed by the parties, and that the contract was not properly authorized. The case went to trial upon these issues.

In the course of the trial, the defendant objected to the introduction in evidence of the plans prepared by the plaintiff upon the ground that they were in violation of the Act of July 12, 1919, P. L. 933, as amended by the Act of April 24, 1933, P. L. 64, regulating the practice of architecture, and also of the Act of May 6, 1927, P. L. 820, regulating the practice of engineering. On each drawing was the legend: "F. F. BOLLINGER Co. Architects and Engineers," and the signature of F. F. Bollinger with no indication of his capacity. Bollinger testified that he had merely approved the plans as president of the corporation, and that their actual preparation was entrusted to engineers in its employ.

The defendant's motions for a compulsory nonsuit and a directed verdict were refused and the jury awarded to the plaintiff the full amount of its claim. The court in banc dismissed defendant's motions for a new trial and for judgment non obstante veredicto, and this appeal followed. No question affecting the merits is here presented. The sole issue is whether the plaintiff is barred from recovery because of its failure to comply with the Acts of Assembly mentioned.

The Engineering Act of 1927 provides in Section 1 that ". . . it shall be unlawful for any person to practice, or to offer to practice, the profession of engineering . . . unless such person has been duly registered or exempted under the provisions of this act." Section 8 provides that a corporation may practice engineering only in the names of persons associated with it who are registered engineers. Section 14 requires that plans, specifications, plates, and reports issued by a registrant shall be stamped with a seal bearing his name and number and the legend "Registered Professional Engineer." Section 16 imposes penalties for violations of the Act and declares them to be misdemeanors. The statute con-

tains provisions for the creation of a professional registration board and for the examination and supervision by the board of those seeking to practice the profession of engineering. It prescribes the moral and educational qualifications of those entitled to registration. It also provides for the annual renewal of certificates of registration, and for the revocation of the certificates of those guilty of fraud, deceit, incompetency or misconduct in their professional activities.

The Architects' Act of 1919, as amended by the Act of 1933, provides for the examination and registration of architects by the State Board of Examiners of Architects. Registration is limited to citizens of good moral character who have completed the prescribed educational courses and have passed the board's examination, or to persons engaged in the practice of architecture prior to the passage of the Act who have submitted evidence to the board of their qualifications. Only those who have registered are entitled to use the designation "registered architect," and the use of the title "architect" is restricted to those previously engaged in the practice of the profession who have filed an affidavit to that effect with the board. Section 13, as amended by the Act of 1933, provides: ". . . it shall be unlawful for any person . . . to enter upon the practice of architecture in the State of Pennsylvania, or to hold himself or herself forth as an architect or as a 'registered architect' . . . unless he or she has complied with the provisions of this act . . . This act shall not be construed to prevent persons other than architects . . . from designing buildings and supervising their construction, provided their drawings are signed by the authors with their true appellation as engineer or contractor or builder or carpenter, but without the use in any form of the title of architect." Section 14 makes violation of the Act a misdemeanor, and prescribes penalties therefor.

Although the plaintiff engages in some construction work and might, as we have seen, perform architectural

services incidental to such work, it is clear that it can do so only in the manner provided by the legislature. As a corporation it cannot qualify as an "engineer" or "architect" under these statutes, nor may it lawfully describe and hold itself forth as either engineer or architect. Yet it did so in the present case, not only in the legend appearing on the plans, but in its letter to the defendant of June 3, 1933, which opens with the following acknowledgment: "We have received your approval and acceptance of our proposition dated May 25th, *in which you employ us as Engineers and Architects* for the rehabilitation of your Brewery plant at Conemaugh. . . ."

There is no doubt that the plaintiff, as a corporation, contracted to perform these services under the style and designation reserved exclusively for members of the two professions, in violation of the Acts of Assembly regulating the subject. The record also discloses that the plans were not signed with the true appellation of the authors as required by Section 13 of the Act of 1919, as amended, and that Section 8 of the Act of 1927 was violated by the failure of the plaintiff corporation to have the plans signed and sealed by a registered engineer. The only signature is that of Bollinger, who testified that he was not a registered engineer or architect.

Plaintiff urges that, though it may have failed to comply with the requirements of the statutes, there is no express prohibition contained therein against the enforcement of contracts made in violation of their provisions; in other words, there is nothing in these acts which forbids recovery for the services it rendered. However, it is well settled that the courts will not lend their aid to the enforcement of unlawful contracts which are founded upon transactions in violation of a public policy declared by the legislature. We have followed this principle and denied recovery for services where there has been a failure to comply with statutory require-

ments for licensing and registration. In many such cases there was no express provision in the statutes denying recovery upon the contract.

For example, we have refused recovery of compensation to unlicensed insurance brokers despite the absence of a specific expression of legislative intent. See *Reilly v. Prudential Ins. Co. of A.*, 264 Pa. 61. In *Golder v. Rabinowitz,* 125 Pa. Superior Ct. 573, it is said (p. 579) : "The plaintiff cannot recover for a service which he was prohibited by the statute from performing; . . . The clear purpose and intent of the Act . . . is, that the transaction of business contrary to law should not receive the aid of courts, by permitting recovery of commissions . . ." Even before the passage of the Act of May 1, 1929, P. L. 1216, expressly denying recovery of compensation to unlicensed real estate brokers, we held that the contracts of such persons were unenforceable. See *Johnson v. Hulings,* 103 Pa. 498; *Verona v. Schenley Farms Co.,* 312 Pa. 57, 65-66; *Sherman v. Welsh,* 87 Pa. Superior Ct. 282. In *Luce v. Cook,* 227 Pa. 224, we said (p. 225) : "This rule rests upon the theory that since the law prohibits under a penalty the doing of business by unlicensed brokers, contracts providing for the payment of commissions to such persons are opposed to good morals and public policy and cannot be enforced."

There is no force to plaintiff's contention that the penalties imposed by these statutes are intended to be the sole punishment for infractions thereof. If the courts were to enforce such unlawful contracts the relatively small fines to which violators of the law are made subject would be insufficient to discourage repeated violations. See *Holt v. Green,* 73 Pa. 198; *Swing v. Munson,* 191 Pa. 582; *Meyer v. Wiest,* 250 Pa. 573; *Employers M. I. & S. Co. v. Pakradooni,* 84 Pa. Superior Ct. 532; *Brenner v. Pecarsky,* 86 Pa. Superior Ct. 414.

Plaintiff also argues that as it has performed the services stipulated, it would be a hardship if defendant were

permitted to evade a just obligation. But it is a hardship created by plaintiff's own conduct and not by the harshness of the rule of law. In *Hazle Drug Co., Inc., v. Wilner,* 284 Pa. 361, we said (p. 368) : "The rule preventing recovery on an illegal contract is founded on public policy, not through any regard for him who sets up such a defense. . . ." And see *Delaware R. Q. etc. Co. v. Pass. Ry.,* 204 Pa. 22.

Plaintiff calls to our attention cases decided under the Fictitious Names Act, such as *Lamb v. Condon,* 276 Pa. 544, and *Rome S. & S. Station v. Finch,* 111 Pa. Superior Ct. 226, but they have no application here because the purpose of the legislature in adopting that particular statute was limited to the protection of individuals from fraud. In the Acts now before us, however, the interest of the public at large is involved. The purpose of the Engineering Act of 1927 is stated to be "to safeguard life, health and property." Architecture and engineering are learned professions with high standards for membership, and it is the intention of the legislature that they should be protected from the encroachments of unauthorized practice, so that the public may not be injured thereby. As we said in *Com. ex rel. v. Humphrey,* 288 Pa. 280, 286 : "Of course, under what circumstances the safety and welfare of the community require the protection afforded by a professional registration act is primarily for the legislature to decide, and when that body concludes that engineers,—who have to do with the construction of our great bridges, reservoirs and buildings, together with other structures which touch the daily life of all the people,—must have their qualifications certified by the State, we can hardly say that such an act is prima facie an abuse of the police power; . . ."

The case of *Simons, Brittain & English, Inc., v. Armstrong,* 86 Pa. Superior Ct. 98, upon which the plaintiff strongly relies, is not in conflict with the conclusion we have reached. In that case a corporation recovered for

services rendered in the preparation of plans and specifications for a theatre and store building. The plans were signed by a duly registered architect. The court said (p. 101) : "We find nothing in the case that would indicate that the plaintiff corporation offended against the act, or that it claimed to be an architect. . . . If this corporation had held itself out as an architect, then it would have come within the prohibition of the act . . ." In the present case, as we have seen, the plaintiff corporation did hold itself out to be an architect as well as an engineer. As the suit in the present case was brought by the corporation, and not by Bollinger individually, the case of *McClymont v. Gitt*, 90 Pa. Superior Ct. 395, has no application.

We therefore conclude that plaintiff is not entitled to recover for the services which it has rendered, and the verdict in its favor must be set aside. The judgment of the court below is reversed, and is here entered for the defendant upon the whole record.

Judgment reversed.