Howarth et ux. *v.* Gilman et al., Appellants.

Argued October 5, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Robert K. Greenfield*, with him *Sundheim, Folz, Kamsler & Goodis*, for appellants.

*C. Laurence Cushmore, Jr.*, with him *White, Williams & Scott*, for appellees.

OPINION BY FINE, J., April 20, 1949:

John A. Howarth and Jennifer Howarth, trading as Howarth & Company, appellees, brought suit in assumpsit to recover from George H. Gilman, Martin Gilman and Alexander Brown, trading as Gilman Manufacturing Company, appellants, the sum of $1,733.13 for services rendered in preparing plans and drawings for a clothes hamper and for engineering advice concerning the manufacture and production of wardrobe cabinets. An affidavit of defense was filed denying a contract with appellees to prepare the plans and drawings and asserting that the advice as to the manufacture and production of wardrobe cabinets was worthless. A jury returned a verdict for appellees for $1,200.00. This appeal is from the dismissal of appellants' motion for judgment n. o. v.

Appellants' basic contention is that the contracts were illegal because appellees were engaged in the practice of the profession of engineering without a license contrary to the Act of May 23, 1945, P. L. 913, 63 PS § 148 et seq., and appellees were thereby barred from recovery. Preliminarily, we shall dispose of appellees' contention that the defense of illegality was not raised by appellants' pleadings and was not interposed in time. That appellees were not licensed pursuant to the Act of 1945, supra, and that John A. Howarth represented himself as being engaged in the "business of industrial designing and engineering," appeared in appellees' case, not only by admitted pleadings, which were read into the record, but also on cross-examination of the appellee. On such state of the record it has been held that such illegality was properly cognizable by the court although such defense had not been previously raised. *Brenner v. Pecarsky*,[1] 86 Pa. Superior Ct. 414, 416. Cf. *F. F. Bollinger Co. v. Widmann Brewing Corp.*, 339 Pa. 289, 14

---

[1] The rule of procedure enunciated in the *Pecarsky* case is not altered or modified by Pa. R. C. P. No. 1030.

A. 2d 81; *Hazle Drug Co., Inc., v. Wilner,* 284 Pa. 361, 368, 131 A. 286.

The evidence considered in a light most favorable to appellees, giving them the benefit of all inferences and deductions reasonably to be drawn therefrom, warrants a recital of the following facts. Prior to March 30, 1946, appellees had satisfactorily performed some services for appellants in the designing of waste baskets, pastel drawings and a set of clothes hampers to replace a metal hamper appellants were then manufacturing, for which services the appellees were fully reimbursed. On that date appellants sought advice of appellees regarding the redesigning of the style of the clothes hamper and thereafter several conferences were held as a result of which the design was altered and, as thus altered, approved by appellants. The drawings of tools and dies to be used in the manufacture of the hamper were also designed by the appellees. Subsequent thereto, at appellants' request, appellees inspected the former's plant and machinery, and, after May, 1946, rendered services to appellants for the purpose of more efficient manufacture and production of wardrobe cabinets, including advice covering spot welding and power brake operations and the drawings of designs for dies. Howarth admitted that although he was not a registered engineer, some of the engineering work was performed by him. On cross-examination, he testified as follows: "Q. You weren't a registered engineer? A. No. Q. Do you have any registered engineers in your employ? A. No, sir. Q. *Who did the engineering part of this job?* A. *It was done by the designers and myself . . .* Q. Do you use mathematics? A. Yes, sir. Q. Do you use a knowledge of metals and their properties? A. Yes, sir. Q. Do you use understanding of machines and machine tools? A. It is essential you understand how a punch press works before you put a die in it or that would

endanger someone. I have run machines, and am familiar with every machine in a commercial shop."

The pivotal issue is whether appellees were engaged in the practice of engineering within the meaning of the Act of 1945, supra. As stated, appellees readily concede that they did not register and obtain a license but contend, however, that the Act of 1945 was not applicable to them. Appellants rely upon allegations in the statement of claim wherein appellees averred that they were "engaged in the business of industrial designing and engineering"; that they rendered "certain engineering advice"; that John A. Howarth so described himself and his services; that he represented himself as an engineer and offered to render engineering services; that Howarth's admissions revealed that his services entailed the use of mathematics and a thorough knowledge of metals and their properties and an understanding of machines and machine tools; that the performance of some of these duties, if done by incompetent parties "would endanger someone." A mere cursory examination of the multitude of highly technical and intricate exhibits and drawings prepared by appellees reveals that engineering knowledge was required and employed. Applicability of the statute in the instant case depends of course upon the nature of the work actually performed and not the appellation or label affixed thereto. However, the extent of appellees' knowledge of the physical sciences, of mathematics and other subjects fundamental to the practice of engineering as was clearly employed here is most persuasive that the services so rendered were in fact the practice of engineering within the legislative intendment of the Act of 1945. In light of the evidence disclosed by this record, we conclude that appellees were so engaged.

Appellees contend, in reply, that if the Act of 1945, supra, is held to apply to them, then the Act is unconstitutional as constituting an arbitrary and unreasonable exercise of the police power. That the said Act is

an exercise of the police power of the Commonwealth is clearly evident from the declarations in the second and third sections thereof that the legislation was to regulate the practice of the profession of engineering, the pursuit of which affected life, health or property or the public welfare. Section 3 specifically provides that: "In order to safeguard life, health or property and to promote the general welfare, it is unlawful for any person to engage, or to offer to engage in the practice of engineering in this Commonwealth, unless he is licensed and registered under the laws of this Commonwealth as a professional engineer . . . It is unlawful for any person to use in connection with his name or to otherwise assume, use or advertise any title or description tending to convey the impression that he is a professional engineer . . . or that he is engaged in the practice of engineering . . . unless such person is licensed and registered with the board." The right to follow a chosen occupation is, of course, a property right; yet it is not an absolute right to be acceded to in all circumstances, for where, as here, injury or harm may be visited upon the general public by those who are incompetent or unqualified to be so engaged, then necessary and reasonable restrictions designed to protect the general public clearly represent a valid exercise of the police power of the Commonwealth. Cf. *Harris v. State Board of Optometrical Examiners*, 287 Pa. 531, 135 A. 237; *Lawrence v. Board of Registration*, 239 Mass. 424, 428, 132 N. E. 174; 11 Am. Jur. Constitutional Law, §§ 275, 284. Moreover, engineering is a learned profession with high standards for membership and it is the intention of the legislature to afford protection from the encroachment of unauthorized practice, which may expose the public to injury. Unquestionably the Act represents a valid exercise of the police power of the legislature. Cf. *Commonwealth ex rel. v. Humphrey*, 288 Pa. 280, 286, 136 A. 213.

Ascertainment and effectuation of the intention of the legislature is the object of all judicial construction of statutes. This is particularly difficult where it is necessary for a court to define the ambit of applicability within constitutional limitations. The circumference beyond which a statute has no application is often difficult to determine since there are fringe activities which may or may not come within the scope of the statute. In determining the applicability of the Act there must be considered the necessity for the law, the mischief to be remedied, the object to be attained and the probable consequences of a given interpretation. Statutory Construction Act, Act of 1937, P. L. 1019, Art. IV, § 51, 46 PS 551. "It has frequently been stated by federal and state courts alike that a law which purports to be an exercise of the police power must not be arbitrary, unreasonable or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the object sought to be attained: Mugler v. Kansas, 123 U. S. 623, 661; Chicago, Burlington & Quincy Railway Co. v. Drainage Commissioners, 200 U. S. 561, 593; Nebbia v. New York, 291 U. S. 502, 525, 537, 539; Mahon v. Pennsylvania Coal Co., 274 Pa. 489, 497; White's Appeal, 287 Pa. 259, 265; Breinig v. Allegheny County, 332 Pa. 474, 483. 'The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations': Lawton v. Steele, 152 U. S. 133, 137; Otis v. Parker, 187 U. S. 606, 608; Burns Baking Co. v. Bryan, 264 U. S. 504, 513. While it is for the legislative branch of government to enact such measures as it deems desirable for the advancement of the public welfare, the judiciary is the ultimate authority to determine whether constitutional restraints have been violated, confining itself, of course, to the question, not of legislative

policy, but of legislative power . . ." *Commonwealth v. Zasloff*, 338 Pa. 457, 460, 13 A. 2d 67.

We need not now determine the limit beyond which the legislature may not constitutionally regulate the profession of engineering or occupations approximating the actual practice of engineering. It is sufficient that in the instant case we are of opinion that the acts done and the services performed for appellants are within the scope of the legislative enactment and that the Act as so applied is a valid and reasonable exercise of the police power. Having failed to comply with the Act of 1945, supra, appellees cannot recover for services which it was unlawful for them to render. *Lindholm v. Mount*, 163 Pa. Superior Ct. 36, 60 A. 2d 422; *F. F. Bollinger Co. v. Widmann Brewing Corp.*, 339 Pa. 289, 14 A. 2d 81.

Judgment reversed, and here entered for appellants.