## Conrath v. Delaney et al., etc.

*Agresti & Agresti*, for plaintiff.

*Marsh, Spaeder, Baur & Spaeder*, and *Thomas Doyle*, for defendants.

LAUB, J., March 26, 1952.—This plaintiff, a registered engineer, sued defendants for the value of his services in preparing plans and specifications involving an addition to a building known as Cook's Market.

After trial, the jury returned a verdict against James Delaney, the owner of the building, in the amount of $840. Defendant now moves for judgment n. o. v. on the ground that plaintiff cannot by law be allowed to recover since the services which he rendered were those which belonged to the field of architecture and not engineering. A motion for a new trial was presented simultaneously with defendant's motion for judgment n. o. v. but it was not pressed at the argument, defendant contenting himself with urging his motion for judgment n. o. v. The rule entered on the motion for a new trial will be discharged.

Although the trial defense was that plaintiff was a volunteer who had not been hired for the purpose stated, the jury's verdict establishes the contrary. Defendant is not barred, however, from asserting the present defense at this time: Howarth et ux. v. Gilman et al., 164 Pa. Superior Ct. 454, 456.

The problem is a factual one since it is conceded that plaintiff may not recover if the work done was primarily architectural and not engineering. See F. F. Bollinger Company v. Widmann Brewing Corporation, 339 Pa. 289; Lindholm v. Mount et al., 163 Pa. Superior Ct. 36; Howarth et ux. v. Gilman, supra, and the same case in the Supreme Court, 365 Pa. 50.

Plaintiff's position is that this was primarily an engineering task, and not architectural, although he admits that some of the work invaded the latter field. This latter admission is not necessarily fatal since the Architects' Registration Act of July 12, 1919, P. L. 933, sec. 13, as variously amended, 63 PS §28, provides that a registered professional engineer "may do such architectural work as is incidental to his engineering work".

The target of this inquiry is whether the work for which plaintiff was hired was primarily one of engineering or, on the contrary, was one which belonged

essentially to the field of architecture. Concededly the two fields overlap to a point where at times the functions of each become almost indistinguishable from the other. The legislature recognized this as fact when, in the licensing acts, permission was given to each to do such work belonging to the other which is incidental to the actor's function: Act of 1919, supra; Act of May 23, 1945, P. L. 923, 63 PS §132. As stated in Smith v. American Packing and Provision Co., 102 Utah 351, 1942; 130 P. 2d 951:

"It depends upon the particular facts of a case whether the preparation of plans and supervision of construction are so far in the field of architecture or not necessarily connected with an engineering project, that a licensed engineer should not attempt to perform such services without also having a license as an architect."

A professional engineer within the meaning of the Act of 1945, supra, is a person who, possessing the necessary qualifications, "initiates, investigates, plans, and directs the control of the forces of and the utilization of the materials of nature, and of human activities in connection therewith," etc. The natural query therefore arises whether such was the essential nature of plaintiff's employment in the instant case. His testimony, which was accepted by the jury and which we must now likewise accept, was that defendant desired the removal of a wall in the then existing structure and the construction of an addition to the building so as to make it larger and to have a basement underneath for storage purposes. The main problem seemed to have been the accomplishment of such purpose without interrupting the operation of the grocery business which was then being carried on in the building. In the language of the plaintiff:

"It meant supporting the roof of the existing building, which would have to be a very careful and intricate

operation, so there would be no danger to the lives of the people occupying the store while these operations were under construction." Involved in the problem was the computation of roof loads, beam loads, column loads and footing loads. It involved the design of columns or posts which would have to be fabricated for the purpose, and necessitated investigation and knowledge of the weight-carrying capacity of the soil. Desired also was a certain amount of grading and paving for a parking lot and the construction of a drainage system including a small disposal well.

It is true that during the course of the talks concerning plaintiff's employment, defendant desired to "dress up" the front of the store so that the elevation might be more attractive and, to this end, indicated a wish to have the style copied of another building across the street. It was also indicated that fireproof construction was desired. This part of the program was purely architectural but it was merely incidental to the main purpose of the employment which, in our opinion, was definitely in the engineering field. The main purpose was controlling gravity so that the roof and walls would not collapse while remodeling occurred. The other elements, that is, the paving and drainage problems, were obviously in the realm of engineering. One cannot but conclude that the essential purpose of the employment was to investigate, plan and direct the control of the forces of and utilization of the materials of nature and of human activities in connection therewith, the very essence of engineering as defined in the Act of 1945, supra.

And now, to wit, March 26, 1952, the rules heretofore granted on motions for new trial and judgment n. o. v. are discharged and the prothonotary is directed to enter judgment on the verdict upon payment of the jury fee.