Valentine Sharpe **FABRICIUS**, Plaintiff-Appellant,

v.

Lee A. **FREEMAN** and **Radiant Burners, Inc.**, an Illinois corporation, Defendants-Appellees.

No. 71–1362.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1971.

Decided Aug. 8, 1972.

Edward G. Levinson, Chicago, Ill., for plaintiff-appellant.

Howard A. Tullman, Richard F. Levy, Lee A. Freeman, Sr., Chicago, Ill., for defendants-appellees; Levy & Erens, Chicago, Ill., of counsel.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.[1]

FAIRCHILD, Circuit Judge.

This is an appeal from dismissal of plaintiff's complaint seeking recovery of a portion of attorney's fees assigned to plaintiff and flowing from an antitrust action brought by Radiant Burners, Inc. against American Gas Association, Inc., and others, 320 F.2d 314 (7th Cir., 1963), and Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co., 273 F.2d 196 (7th Cir., 1959), rev'd 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961). We have previously considered other facets of attorney's fees in that case.[2]

The background of the dispute over fees was set out in this court's unreported order in No. 71–1301, as follows:

"The original attorneys in the case were Joseph Keig, Sr. and Victor Neumark. Keig engaged John O'C. Fitzgerald, and Charles F. Marino became

1. Argued orally before Judges Hastings, Fairchild and Kerner. Judge Kerner later disqualified himself. Judge Cummings was designated in his place, read the briefs, and listened to the recording of the oral argument. Re-argument is deemed unnecessary.

2. See Radiant Burners, Inc. v. American Gas Association, Inc., No. 71–1301 (Mar. 20, 1972); Fitzgerald et al. v. Freeman et al., 409 F.2d 427 (7th Cir. 1969), cert. denied 396 U.S. 875, 90 S.Ct. 151, 24 L.Ed.2d 134.

involved as an attorney working in Fitzgerald's office. . . . . The original action proceeded to the Supreme Court at which time Neumark brought in two more attorneys, Lee A. Freeman and Richard F. Levy, to take over all responsibility. On December 20, 1960 Radiant Burners entered into an agreement with Keig, Neumark, and Fitzgerald (which binds Marino since he was an employee of Fitzgerald) to fix amounts owed to them for work already done on the case. On April [19], 1961 Fitzgerald, Marino, and Keig contracted to divide amongst themselves the Keig-Fitzgerald share · of the December 20 agreement: Keig and Fitzgerald were each to receive 45% of that share, and Marino was to receive 10%. Keig then executed an assignment to Freeman of any interest he had in professional fees from this case.

"On October 20, 1965 Fitzgerald and Marino filed a petition to enforce an attorney's lien claiming their share of the recovery under the December 20 agreement. The district court ordered (1) that the December 20 agreement be disregarded as inconsistent with the canons of professional ethics (ABA Canons of Professional Ethics Nos. 34, 'Division of Fees', and 13, 'Contingent Fees'), (2) that Fitzgerald be awarded [on a quantum meruit basis] $17,500 without interest, (3) that Marino be compensated by Fitzgerald in accordance with the terms of their agreement, and (4) that the $17,500 be paid by attorneys Freeman, Levy, and Neumark, who had already received compensation, in proportion to the amounts each received."

Plaintiff brought this action in an Illinois court on October 1, 1970. Defendants were Radiant Burners and Attorney Freeman, and she sought recovery of 30% of the amounts due Keig under the December 20 agreement, pursuant to assignments to plaintiff by Keig. Mr. Freeman had signed an "assent" at the foot of the December 20 agreement and apparently ultimately received whatever fee was due to Keig. Defendants removed the action to the district court, alleging that it had assumed jurisdiction over the December 20 agreement and that the matter of the Fitzgerald-Marino petition was pending there.

Plaintiff alleged that she was legal secretary to Joseph Keig, Sr. from 1957 to about July 15, 1961; that in the course of her employment she performed secretarial and paralegal services for which she was not paid and in addition advanced approximately $2,500 to her employer; that in payment of salary and repayment of the $2,500, Keig executed two assignments of his interest in attorney's fees to come due under the December 20 agreement; that the first assignment, executed January 11, 1961, assigned to plaintiff 20% of any monies to be received by Keig under the December 20 agreement, and the second assignment, executed July 5, 1961, assigned an additional 10% of the same monies; that on January 16, 1961 defendant Radiant Burners acknowledged its notice of the first assignment and promised to honor it; that on February 6, 1962, Keig assigned to defendant Freeman for $1,000 his interest under the December 20 agreement, with the express representation that Keig had already assigned 30% of his interest to plaintiff; and that on the basis of the December 20 agreement and the assignments to her from Keig, she is entitled to $14,428.08 which defendants have refused to pay.

The basis of computation of the sum demanded by plaintiff is not clear, but need not be decided here. The December 20 agreement provided that Keig and Fitzgerald were to receive, collectively, an amount equal to $11\frac{1}{4}\%$ of all monies, property, and other things of value recovered or obtained by judgment, settlement, compromise or otherwise. Without foreclosing plaintiff from proving otherwise, if she can, it would appear that the total recovery by settlement was $450,000, $11\frac{1}{4}\%$ thereof

$50,625, Keig's 45% of the latter $22,781.25, and plaintiff's 30% of the last $6,834.38.

Defendants filed a motion to dismiss asserting that plaintiff failed to state a claim upon which relief can be granted because (1) assigning to plaintiff, Keig was splitting fees with a layman in violation of Canon 34 of the canons of professional ethics [3] and that the assignment is therefore unenforceable, and (2) her action is barred by the prior adjudication of the attorneys' interests as described above. The district court dismissed the complaint without opinion.

Concluding that neither ground of defendants' motion to dismiss was valid, we reverse. In our view, assuming the facts alleged in the complaint, plaintiff is entitled to recover 30% of the amount Keig would have been entitled to recover. That amount has never been liquidated by adjudication or agreement, at least in any manner that binds plaintiff. It appears that Keig's assignment to Freeman, with notice of plaintiff's interest, transferred only the balance of Keig's interest. The propriety of the ruling of the district court in the Fitzgerald and Marino proceeding that the December 20, 1960 agreement must be disregarded as unethical has not been argued on this appeal, and we express no opinion thereon. Depending upon how that issue is decided upon remand, the amount of Keig's claim, 30% of which plaintiff claims, will be determined by application of the December 20 agreement or on quantum meruit.

*Argument based on professional ethics*: There has been no claim that plaintiff's services to Mr. Keig constituted the practice of law so as to be unlawful in themselves. Although the amount of his fee was thought under the December 20 agreement to be contingent upon ultimate recovery, and, even upon quantum meruit, would reflect to some extent the degree of success, his right to a fee was

an asset, part of which was assigned to plaintiff in discharge of his indebtedness to her.

We must assume at this stage that plaintiff rendered valuable and lawful services to Keig and advanced funds to him, and accepted a partial assignment of his claim for fees, with notice to all interested parties, as a means of getting paid. Whatever Keig's services were worth, they have contributed to the benefits reaped by defendants. Given such facts, it ill behooves members of the legal profession to summon up a precept of professional ethics in order to deprive a layman of the fruits of honest labor.

■ We do not decide whether, under the circumstances, Mr. Keig violated Canon 34 by making the partial assignment to plaintiff. Even if he did, we conclude that fact is not a proper ground for dismissal of plaintiff's complaint.

Here, where the arrangement is allegedly inconsistent with a canon of professional ethics, it seems reasonable not to apply the rigorous public policy doctrine of denying judicial aid to every party to an unlawful contract, particularly where the party seeking judicial aid is not a member of the profession governed by the canons.

"It is the decision of the Committee that the attorney should not interpose as a reason for not carrying out the agreement he made that the agreement was not ethical. This matter of ethics should have been recognized and adhered to by the attorneys before they entered into the agreement. When two lawyers have participated in an unethical agreement one of them should not, where no one else is involved, set up the unethical agreement against the other." [4]

If a lawyer is not to set up the unethical agreement against another lawyer, so much less should a lawyer, as the succes-

---

3. Canon 34 provides, "No division of fees for legal services is proper, except with another lawyer based upon a division of service or responsibility."

4. Informal Opinion No. 870 of the Standing Comm. on Professional Ethics of the American Bar Ass'n, Aug. 4, 1965.

sor in interest of the lawyer who made the allegedly unethical agreement, with notice, be permitted to defeat a lay person's claim.

■ *Claim of res judicata.* In the Fitzgerald-Marino fee proceeding, the district court decided that fees should be awarded on quantum meruit and not according to the December 20 contract. The same issue is present in plaintiff's case. She is not, however, bound by that decision unless she was a party or privy to a party. •

We do not find a sufficient basis for saying she was either a party or privy. She filed no petition; no process was served upon her. She did not appear. At some undisclosed date she served a notice of attorney's lien on all parties to the antitrust action and their attorneys, but it does not appear whether it was filed, and if it was, it does not appear ever to have been treated as a pleading or appearance.[5] The decision did not treat with her claim, but expressly acknowledged that Keig, from whom her claim was derived was "of course, not involved in this dispute."

The fact that she could have intervened, though she did not, does not result in her being bound by that adjudication. See Gratiot County State Bank v. Johnson, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587 (1918).

■ Privity is not established by showing that the prior decision involves the same issues of law or fact and will affect the subsequent litigant's rights as judicial precedent. See Litchfield v. Crane, 123 U.S. 549, 8 S.Ct. 210, 31 L. Ed. 199 (1887).

But even were plaintiff bound by the prior adjudication, which she is not, her claim would not have been wholly defeated. Keig would have been entitled to some amount on a quantum meruit basis, so that disregarding the December 20 contract would not abrogate plaintiff's claim to any greater extent than it abrogated Fitzgerald and Marino's. Furthermore, in the prior case, the district court enforced between Fitzgerald and Marino the April 19, 1960 contract dividing fees among Keig, Fitzgerald and Marino, which derived, as does plaintiff's claim, from the December 20 agreement, presumably on the basis that the later contract was a fair division under a quantum meruit standard.

The dismissal of plaintiff's claim cannot be sustained.

■■ Finally, we note there is some question whether plaintiff's action was properly removed from the state court to federal court. Plaintiff's claim was essentially a state law claim on an assigned obligation due the assignor for his services. That a related case was pending in federal court was not in itself sufficient grounds for removal under 28 U.S.C. § 1441. Plaintiff could, however, have sought relief in the federal district court because of its jurisdiction over the principal antitrust action.[6] Defendants effected removal and plaintiff did not seek remand in district court. In this court she does no more than call our attention to the possible question. Under these circumstances, there is no defect in subject matter jurisdiction, and plaintiff's objections to removal, if any, have been waived. See 1A Moore's Federal Practice ¶ 0.163

---

5. Bentley v. Teton, 19 Ill.App.2d 284, 153 N.E.2d 495 (1958), on which defendants rely, is distinguishable. There the "stranger" was closely involved with the prior administrative hearing and appeared as a witness. He was permitted to assert the hearing decision on an identical issue of fact against a party to the prior hearing. In the instant case, defendants, who were parties to the prior proceeding, would assert the prior judgment against a stranger to the prior proceeding, one who had no opportunity to present arguments, evidence, or witnesses when the adjudication was made. The ends of justice would not be similarly served in applying estoppel in the instant case.

6. Clarion Corporation v. American Home Products Corporation, 464 F.2d 444 (7th Cir., June 30, 1972).

[.4–4]; Parks v. Montgomery Ward & Co., 198 F.2d 772 (10th Cir., 1962).

The judgment is reversed and the cause is remanded for further proceedings.