## Foote v. Shapiro

*John R. Greisamer,* for plaintiff.
*Samuel F. Feldman,* for defendant.

BACKENSTOE, *J.,* April 24, 1978—This is a suit between two attorneys to recover moneys allegedly owed on an oral contract to split a fee. Defendant

has moved for summary judgment, contending that the alleged fee-splitting arrangement violated the Code of Professional Responsibility, specifically DR 2-107(A),[1] and should, therefore, be deemed void and unenforceable. We are of the opinion that a contract, albeit between two lawyers, cannot be deemed unenforceable merely because the contract itself or the conduct or transaction from which the contract arose violates the Disciplinary Rules of the Code of Professional Responsibility.

In July of 1971 plaintiff was retained by a client seeking to recover damages for injuries he received in a highway accident. At that time the client entered into a contingent fee agreement with plaintiff. Under the terms of the agreement plaintiff was to receive 25 percent of any moneys recovered by the client before suit was instituted and 33⅓ percent of any recovery thereafter. Sometime in May, 1972, plaintiff turned the client's file over to defendant, an erstwhile associate of plaintiff. At the time the file was transferred, the parties had an oral agreement on the division of the fee, although the terms of agreement are not clear from the record.

---

1. DR 2-107(A) provides as follows:

"(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

"(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

"(2) The division is made in proportion to the services performed and responsibility assumed by each.

"(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client."

During the next five months, defendant interviewed the client and another witness, arranged for a medical report on the client, and pursued settlement negotiations with the insurance adjuster for the opposing side. Then, in November 1972, plaintiff requested that the file and the case be returned to him. In December 1974 the client dismissed plaintiff as his attorney and the case was once again returned to defendant. This time the client executed a contingent fee agreement with defendant similar to the original agreement with plaintiff. Subsequently, the case was settled, and defendant received a $5,000 fee pursuant to his agreement with the client. Plaintiff, alleging an oral contract between himself and defendant, now demands to be paid 50 percent of the $5,000 fee.

For the purpose of disposing of the instant motion, we accept as true plaintiff's allegation that an oral agreement existed between the parties. See Ritmanich v. Jonnel Enterprises, Inc., 219 Pa. Superior Ct. 198, 280 A. 2d 570 (1971).

A contract is illegal " 'if either its formation or its performance is criminal, tortious, or otherwise opposed to public policy.' " Contractor Industries v. Zerr, 241 Pa. Superior Ct. 92, 97, 359 A. 2d 803, 805 (1976), quoting Restatement, Contracts, §512 (1932). A contract is illegal and unenforceable if either its formation or performance is prohibited by statute: F. F. Bollinger Co. v. Widmann Brewing Corp., 339 Pa. 289, 14 A. 2d 81 (1940). However, a contract will not be declared void if it is not the intent of the legislature to make it illegal and void: Allentown Ahead Fund v. Classic Photo Lab, Inc., 36 Lehigh 401, 404 (1975). Although contracts contrary to public policy may be deemed void, this should be the result only in clear cases: Kuhn v.

Buhl, 251 Pa. 348, 96 Atl. 977 (1916). Accord, Simmons v. U.S., 120 F. Supp. 641, 648 (M.D. Pa. 1954).

The Code of Professional Responsibility is not a legislative enactment or statement of positive law.[2] Rather, the code was designed by a committee of the American Bar Association "to be adopted by appropriate agencies both as an inspirational guide to the members of the profession and as a basis for disciplinary action when the conduct of a lawyer falls below the required minimum standards stated in the Disciplinary Rules." A.B.A. Code of Professional Responsibility, Preamble and Preliminary Statement (1970). What little consideration the A.B.A. Committee on Professional Ethics has given the question suggests that violation of the code should not raise a bar to the enforcement of a contract to which a lawyer is a party. In an informal unpublished opinion the Ethics Committee dealt with a similar case as follows:

"No decisions have been found holding where a contract is found void or unenforceable merely because a lawyer is party to a transaction in violation of a Canon, where the practice is not one which is held unlawful apart from the Canon. Accordingly, where a lawyer has agreed to divide his fee with a trust officer of a bank, who is also a lawyer but who has performed no service, if he agrees in violation of the Canons to pay the trust officer, he does so at his peril; and similarly in the case of an agreement to

---

2. Positive law is defined as: "Law actually and specifically enacted or adopted by proper authority for the government of an organized jural society." Black's Law Dictionary 1324 (4th Ed. 1951).

pay forty percent to the estate of a deceased partner." Informal Opinion No. 6 A.B.A. Committee on Professional Ethics (unpublished), American Bar Association, Opinions of the Committee on Professional Ethics 9 (1967). The only other treatment of this issue is found in Informal Opinion 870 of the A.B.A.'s Committee on Professional Ethics. This instructive opinion is set forth at length as follows:[3]

"We have received from you the following letter requesting an answer to the question set forth in your letter:

"'Rule No. 34 of the Canons of Professional Ethics of the American Bar Association provides that fees shall be divided between attorneys based on the division of work between all attorneys who participate.

"'In September 1963, at a time when this Canon had not been called to our attention one of the men in our firm made an arrangement with an attorney in a nearby community in connection with the division of fees in a case now pending in our office. The fees were to be divided on the basis of one-third to him as the 'forwarding attorney' and two-thirds to our firm. We have every reason to believe that our office is about to bring this case to a successful and satisfactory conclusion. The amount of the fee will be $40,000, or very close thereto.

"'The clients are very much opposed that the original attorney receive any compensation, excepting on a quantum meruit basis. They explain

---

3. The opinion interprets Rule No. 34 of the Canons of Professional Ethics from which Disciplinary Rule 2-107(A) is derived.

that the reason that they consulted us was that they had been dissatisfied with the original attorney.

"'"Original' attorney did very little work on the case—no more than 2%, if that.

"'I am enclosing a copy of the letter regarding the division of fee written by a member of our firm, blanking out the name of the attorney to whom the letter was sent. (Enclosure reads as follows: This will confirm our discussion of today that our fee arrangement with Mr. and Mrs. A and Mr. and Mrs. B is 33-1/3% of any settlement prior to suit, and 40% of any recovery after the institution of suit. The division of fees between our offices is to be one-third of the total fees to you and two-thirds to this office.)

"'The question that we ask of you: is our firm bound to honor the agreement in this letter, or is it proper, even at this date, and in spite of this letter, to ask an impartial group to evaluate the percentage of work done by the individual attorney and the amount of work done by our firm, and to divide the fees on that basis?'

"When the late Henry S. Drinker, a former chairman of this committee, wrote his authoritative work Legal Ethics, he devoted an entire section of his book to the subject "The Lawyer's Obligations and Relations to Other Lawyers." The following are quotations from that work:

"'A lawyer should not ignore known customs or practice of the Bar or of a particular Court, even when the law permits, without giving timely notice to the opposing counsel. As far as possible, important agreements affecting the rights of clients, should be reduced to writing; but it is dishonorable to avoid performance of an agreement fairly made because it is not reduced to writing, as required by rules of Court.' (page 194).

"'A very great part of a man's comfort, as well as of his success at the Bar, depends upon his relations with his professional brethren. With them he is in daily necessary intercourse, and he must have their respect and confidence, if he wishes to sail along in smooth waters. He cannot be too particular in keeping faithfully and liberally every promise or engagement he may make with them.' (page 194).

"'A lawyer may not repudiate an oral stipulation, made in return for a favor granted, which cannot be revoked, to admit a certain fact in issue, which at the time could have been proved but now can be, if at all, only with difficulty; this despite his client's insistence and the existence of a court rule making oral stipulations enforceable.

"'A lawyer must also observe the customs of the bar as well as the confidences of another lawyer, although indiscreetly given and improperly received, and although this may entail his withdrawing from the case.' (page 195).

"'It is the decision of the Committee that *the attorney should not interpose as a reason for not carrying out the agreement he made that the agreement was not ethical.* This matter of ethics should have been recognized and adhered to by the attorneys before they entered into the agreement. *When two lawyers have participated in an unethical agreement one of them should not, where no one else is involved, set up the unethical agreement against the other.*" Informal Opinion No. 870, A.B.A. Committee on Professional Ethics (August 4, 1965). (Emphasis supplied.)

While the disciplinary rules purport to "state the minimum level of conduct below which no lawyer

can fall without being subject to disciplinary action" and are said to be "mandatory in character,"[4] their violation alone will not defeat a contract between lawyers. Accordingly, defendant's motion for summary judgment must be denied.

## ORDER

Now, April 24, 1978, for the reasons appearing in the accompanying opinion, it is ordered that defendant's motion for summary judgment in the above-captioned matter is denied.

---

4. A.B.A. Code of Professional Responsibility, Preamble and Preliminary Statement (1970).