Tom E. MACURDY, Plaintiff,

v.

SIKOV AND LOVE, P.A., et al., Defendants.

No. C82–3811Y.

United States District Court, N.D. Ohio, E.D.

Sept. 20, 1988.

John Ruffalo, Dudley B. Ruffalo, Hilton Head Island, S.C., for plaintiff.

Seymour A. Sikov, Pittsburgh, Pa., and Jack R. Baker, Baker, Meekison & Dablikar, Canton, Ohio, for defendants.

## ORDER

BATTISTI, Chief Judge.

Before this Court is Defendant's motion for summary judgment. This motion turns on the law concerning attorney fee arrangements but a review of the facts of the case at bar is required.

Plaintiff Macurdy lived in Ohio, but close to the border of Pennsylvania. He was licensed to practice law in both states and,

in fact, had client matters in each jurisdiction. The genesis of the instant case is traceable to his disbarment from practice in Pennsylvania.[1] When Macurdy could no longer represent clients in Pennsylvania, he approached the firm of Sikov & Love and made arrangement for them to handle his cases. Taking Plaintiff's assertions as true for the sake of the instant dispositive motion, Plaintiff Macurdy and Defendant Evans, an attorney with Defendant firm Sikov & Love, met and agreed that Defendant firm would take over Plaintiff's Pennsylvania cases and, further, that any fees generated from these matters would be split equally.[2] Over time, Sikov & Love worked on, and resolved, all of the Macurdy matters. During the pendency of some of these matters, specifically on June 14, 1979, Plaintiff was advised by Sikov & Love that fees could only be paid to him on the basis of quantum meruit since Macurdy was no longer licensed to practice law in Pennsylvania and, inter alia, the Code of Ethics prohibited the arbitrary 50–50 split of the fees. Checks based on a quantum meruit calculation were tendered in partial satisfaction of the fees owed Macurdy. Initially these were returned by Plaintiff but ultimately he accepted and cashed a check in the sum of $26,643.99, which was accompanied by a letter through which Defendants sought to effectuate an accord.[3] Despite receipt and endorsement of this payment, the instant action was filed in state court and later removed to this Court.

In reviewing and determining a motion for summary judgment, the facts must be construed in a light most favorable to the non-moving party. Only through such a perspective may the court reach the determination that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. In this matter summary judgment is warranted both substantively and procedurally.

Plaintiff alleges in his complaint that Defendant fraudulently induced him into this fee splitting arrangement in order to intentionally deprive him of monies rightfully his.[4] The gist of his complaint, therefore, sounds in fraud. In passing, however, breach of the oral fee-splitting contract is also asserted. Thus both claims of fraud and breach of contract must be addressed in order for the granting of summary judgment to be appropriate.

■ The point of departure for any analysis of a case which comes to this court via removal from the state court is to determine the operative body of substantive law. The transaction at issue involves two states, both of which have a relationship to the parties and the contract. Ohio was the locus of execution and payment, whereas Pennsylvania was the locus of performance. As a diversity action removed to federal court in Ohio, Ohio choice of law rules must govern determination of which state's substantive law applies. Consideration and careful balancing of the respective interests in applying Ohio or Pennsylvania law leads to the conclusion that the law of the State of Pennsylvania must be controlling.

Ohio conflict of law rules consider the place of making a contract, the place of performance of a contract, the intention of the parties as well as, of recent, substantial contacts with the respective states. The fee splitting arrangement in this matter was admittedly struck in an Ohio restaurant and it is undisputed that payments were made to Macurdy in Ohio. Thus the "place of making" analysis would encour-

---

1. Although irrelevant to the proceedings at hand, Plaintiff was subsequently disbarred in Ohio.

2. The terminology apparently used was a 50–50 split and this phraseology is synonymously used herein.

3. Because this matter is resolved on other grounds, it is unnecessary to reach the satisfaction and accord issue.

4. Plaintiff's Complaint at ¶ 15 alleges that "through the entire transaction and proceedings defendants have engaged in malicious, unlawful and deliberate course of conduct designed to deprive and defraud the plaintiff of the monies legally and properly due him."

age selection of Ohio law. However, the agreement at issue was designed to secure Sikov & Love's performance of legal services exclusively[5] in Pennsylvania—where Plaintiff was now unauthorized to practice law. Therefore, "place of performance" analysis leads to selection of Pennsylvania law. No expression whatsoever of the parties' intentions as to choice of law is presented, and equally compelling arguments appear initially for the selection of either state. Dictating this issue, therefore, must be the substantial contacts with Pennsylvania which arise because that forum is also the state with a much greater interest in protecting the public from inappropriate actions by lawyers with respect to legal representation within its borders. As a result, Ohio conflict law results in the selection of Pennsylvania law as controlling.

Having determined the operative substantive body of law, both the fraud and contract claims must be analyzed pursuant to it, as must any defenses thereto. Claims of fraud and breach of contract, because of their inherently different natures, will be addressed separately. The fraud claim, premier in the complaint, will be considered first and the breach of contract issue will follow.

█ Initially, Plaintiff's assertion of fraud should be viewed independently of the ethical canons and the policy surrounding arbitrary fee splitting arrangements. The basis for this is straightforward—a person may not fraudulently induce another and then academically hide behind the statement that the fraudulent contract is unenforceable.[5] A review of the progress of their dispute prior to the filing of a complaint, however, renders unnecessary resolution of the fraud claim since this one of Plaintiff's claims suffers a fundamental flaw: it is barred by the statute of limitations.

The actions which Plaintiff alleges constituted fraud began on September 15, 1978 when Macurdy and Evans met to discuss the transfer of cases. The allegedly fraudulent deal was struck at that moment and the files were transferred to Sikov & Love who proceeded to represent Macurdy's former clients seeking to resolve their cases.[6] Accepting a fraud for the purpose of this ruling, it is found to have occurred on September 15, 1978. At that time Plaintiff presumably did not know of it. But, on June 14, 1979 Sikov & Love, through Evans, asserted Macurdy's right only to payment in quantum meruit. Thus, if fraud was in fact present, it was clearly discernable by June 14, 1979.

The statute of limitations for fraud is two years. 42 P.A.Cons.Stat. § 5524(3). Even accepting the date of discovery of the fraud rather than the date on which it was perpetrated, Plaintiff's complaint was filed substantially beyond the limitations period. As a result, summary judgment for Defendants is appropriate for, as a matter of law, Plaintiff may not prevail on this claim.

█ With respect to the breach of contract claim, however, it is far less clear that Plaintiff's complaint suffers such a procedural flaw. Although a material question of fact concerning the statute of limitations on the contract claim be absent also, summary disposition of this claim is appropriately granted based on the substance of the contract which Plaintiff seeks to enforce.

Summary judgment against a claim alleging breach of an attorney fee splitting contract is the only appropriate result. The basis for this result rests in the long recognized notion that it is inappropriate to seek to resolve certain matters in a court of

---

5. This is particularly true when one party would fail to understand the unenforceability of a contract. Here, however, individuals trained in the law were involved and despite the fact that Plaintiff's disbarments belie the fact that he may not have understood his ethical responsibilities, the parties before this Court must be considered to stand on equal footing.

6. There is no evidence that the clients expressly consented to the choice of the new lawyers, for Plaintiff asserts his right to have transferred the cases under "Power of Attorney contracts." Interestingly, failure in this regard might affect the quantum meruit recovery he has already received.

law. Public policy, history and tradition mandates that some contracts, although perhaps not illegal to make, will not be enforceable by aid of the judicial process. In such instances, the parties must exclusively rely on the good faith of the other for a failure of performance by one side of a bilateral arrangement may not be remedied by turning to the courts. All parties entering into transactions in which policy mandates judicial abdication assume the risk that if the deal fails, the loss must rest where it happened to fall. Such is the case here.

Plaintiff and Defendants entered into a transaction whereby Plaintiff would refer his cases for a set percentage fee.[7] Under the apparently bargained terms, the amount Macurdy was to receive from Defendants was arbitrarily fixed and bore no relation to the amount of work Macurdy performed on any given client matter. This is the heart of the problem. The policy governing attorney fee arrangements is clearly enumerated in the Code of Professional Responsibility, adopted in both Pennsylvania and Ohio. With respect to division of attorney fees, the Code's broad principle is stated in Ethical Consideration 2–22 as follows:

> Without the consent of his client, a lawyer should not associate in a particular matter another lawyer outside his firm. A fee may properly be divided between lawyers properly associated if the division is in proportion to the services performed and the responsibility assumed by each lawyer and that the total fee is reasonable.

This broad, governing principle is applied in Disciplinary Rules which detail the level of conduct below which a lawyer may not fall without reprimand, sanction, suspension or even disbarment. Specifically, Disciplinary Rule 2–107(A) provides that:

> A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

> (1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

> (2) The division is made in proportion to the services performed and responsibility assumed by each.

> (3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

Manifestly, the contract entered into by the parties before this Court failed to comport with the fundamental rules which govern behavior of practitioners of the law.

Plaintiff, in essence, presently is asking this Court to ignore the fact that he entered into a contract that patently violates the ethical cannons and, even worse, he is asking this Court to enforce a deal he should not have made in the first place. This Court must not, and will not, lend credibility to action which ignores the principles which must govern attorney behavior. To enforce any contract which is violative of established policy unnecessarily and inappropriately undermines a court's role. A change in the ethical rules concerning the practice of law or fee splitting arrangements between lawyers should not, in this instance, be judicially mandated.

Despite the fact that Plaintiff may have legitimately misunderstood his ethical duties and, therefore, thought his conduct was proper, this Court may not reach to help him at the expense of a dysfunctional result. Although it seems that judicial inaction here will benefit. Defendants, who appear to be equally culpable concerning ethical behavior, disposition is the only appropriate result. Simply put, the Court must refrain from acting despite a resulting inequity that may appear present here for this transaction, *ab initio,* was fraught with problems. The parties entered into a transaction and must be assumed to have known they were proceeding at their peril. Accordingly, as a matter of law, the disposition of this case pursuant to Fed.R.Civ.P.

---

7. Agreements such as this are known by several names including fee splitting arrangements, re-ferral fee contracts and finder's fee deals.

56 is appropriate and Defendant's motion for summary judgment is hereby granted.

IT IS SO ORDERED.