**Tom E. MACURDY, Plaintiff–Appellant,**

v.

**SIKOV & LOVE, P.A., et al.,
Defendants–Appellees.**

No. 88–3981.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1989.

Decided Jan. 24, 1990.

John Ruffalo (argued), Hilton Head Island, S.C., for plaintiff-appellant.

Jack R. Baker (argued), Baker, Meekison & Dublikar, Canton, Ohio, Seymour A. Sikov, Pittsburgh, Pa., for defendants-appellees.

Before JONES and RYAN, Circuit Judges; and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

Appellant Tom E. Macurdy appeals from an adverse summary judgment dismissing his fraud and breach of contract claim against appellees, a Pennsylvania law firm and several of its members. The principal issue in the case, although there are others, is whether Pennsylvania or Ohio law governs. The district court held that Pennsylvania law controls and requires that the appellant's fraud claim be dismissed as barred by the statute of limitations, and his contract claim be dismissed as violative of public policy.

We disagree with the district court's analysis and, therefore, reverse its order granting summary judgment.

I.

At the time relevant to this lawsuit, appellant Macurdy was an Ohio resident living and practicing law in Ohio. At one time he had been licensed to practice law in Pennsylvania as well, but was suspended from practice in that state in June of 1978. At the time of his suspension in Pennsylvania, Macurdy had six Pennsylvania clients seeking to recover damages in as many unrelated Pennsylvania negligence actions. He arranged, with the permission of his clients, for the Pennsylvania law firm of Sikov & Love to assume responsibility for settlement or litigation of those matters.

Taking Macurdy's pleaded assertions as true, it appears that on September 15, 1978 he had a meeting in an Ohio restaurant with Charles E. Evans of Sikov & Love and orally agreed to turn the six Pennsylvania cases over to Sikov & Love, provided that legal fees recovered from the matters would be split "50–50." Macurdy indicated to Evans that suit had been started in five of the six cases and those matters were ready for trial. The Pennsylvania law firm eventually settled all six cases, recovering legal fees in the amount of $185,719.32, of which Macurdy now claims entitlement to one-half.

In June of 1979, Sikov & Love sent Macurdy a letter indicating that two of the cases had settled, but that Macurdy would only be entitled to compensation based on *quantum meruit* because Macurdy was no longer licensed to practice law in Pennsylvania and because the disciplinary rules of the Pennsylvania Supreme Court required *quantum meruit* fee sharing. Sikov & Love tendered a number of checks to Macurdy in partial satisfaction of fees owed him, all of which Macurdy returned uncashed. Eventually Macurdy received and cashed a check for $26,643.99, which was accompanied by a letter that stated: "With this check, we have now forwarded you all monies owed on the various cases."

Macurdy filed suit against Sikov & Love in an Ohio state court on November 29, 1982, alleging both fraud and breach of contract, and seeking recovery of the remainder of his claimed one-half interest in the $185,719.32 contingency fee award. Defendants removed the action to the federal court for the Northern District of

Ohio, and eventually moved for summary judgment, alleging that the *fraud* claim was time barred under applicable Pennsylvania law and that the *contract* claim was unenforceable on the grounds that it violated both public policy and the statute of frauds. Although defendants did not plead the defense of accord and satisfaction in their answer, they nevertheless argued in their motion for summary judgment that appellant's contractual claim should be denied, based on accord and satisfaction principles.

The district court did not address the accord and satisfaction argument, but, applying Pennsylvania law, ordered summary judgment against Macurdy on the fraud claim because "if fraud was in fact present, it was clearly discernable by June 14, 1979." *Macurdy v. Sikov and Love, P.A.*, 701 F.Supp. 134, 136 (N.D. Ohio 1988). Since Macurdy's lawsuit was filed over two years after the fraud, Pennsylvania's two-year statute of limitations barred its prosecution. The court also determined that Macurdy's contract claim was unenforceable on public policy grounds because the "50–50" fee splitting agreement violated the Model Code of Professional Responsibility DR 2–107(A),[1] which both Ohio and Pennsylvania had adopted.

## II.

Summary judgment is properly granted where a dispute presents no genuine issue of material fact. Fed.R.Civ.P. 56(c). In considering the propriety of a motion for summary judgment, the district and appellate courts must view all facts and inferences in a light most favorable to the non-moving party. *S.E.C. v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). "The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The disputed issue does not have to be resolved conclusively in

favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

### A.

■ We address, first, the question whether Ohio or Pennsylvania law controls the case.

It is well-settled that "[f]ederal courts sitting in diversity must apply the choice-of-law principles of the forum." *Tele–Save Merchandising Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir.1987) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Ohio law still recognizes the traditional doctrine of *lex loci delicti*, but that principle no longer automatically determines which state's law applies. In *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 341, 474 N.E.2d 286 (1984), the Ohio Supreme Court held that Ohio courts confronted with conflicts of law questions should apply the analysis set forth in the Restatement (Second) of the Law of Conflicts.

In this case, the district court analyzed the choice of law principles pertaining to suits for breach of contract claims but not for fraud claims, and apparently concluded that, because Ohio would require that contract claims and defenses be resolved under Pennsylvania contract law, Pennsylvania's shorter statute of limitations also applied to Macurdy's fraud claim. We think the district court erred in failing to recognize that Macurdy's fraud claim derives from tort law, and that the Restatement of Conflicts mandates a different choice-of-law analysis to determine which state's law applies to a tortious fraud claim.

Section 148 of the Restatement (Second) of Conflicts of Law governs choice of law

---

1. The text of Disciplinary Rule 2–107(A) is set forth at part II.B., *infra*.

for claims of fraud.[2] It establishes a presumption that Ohio law applies to this fraud claim because, according to Macurdy's complaint, the alleged fraud occurred in Ohio when the defendants represented that they would split attorney fees with Macurdy "50–50," and in reliance thereon Macurdy delivered over to Sikov & Love his clients' files, including his work product papers relating to each case. The factors delineated in § 6 of the Restatement of Conflicts, to which § 148(1) refers, do not rebut the presumption that Ohio's statute of limitations applies to Macurdy's fraud claim because all of the contacts for purposes of the fraud claim occurred in Ohio, and Pennsylvania has no real interest in protecting Ohio's citizens from frauds committed against them in Ohio. The defendants have not shown that Pennsylvania would have an interest in adjudicating this fraud claim. Accordingly, the district court should have applied Ohio's statute of limitations to Macurdy's fraud claim.

**2.** Restatement (Second) of Conflict of Laws § 148 governs choice of law for claims of tortious fraud and/or misrepresentation. In pertinent part that section provides:

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Section 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law,
  (f) certainty, predictability and uniformity of result, and

■ Ohio's statute of limitations for fraud actions permits suits up to four years after the fraud is discovered. Ohio Rev. Code Ann. § 2305.09 (Anderson 1981). In its opinion, the district court found that the alleged fraud "was clearly discernable by June 14, 1979." 701 F.Supp. at 136. Since Macurdy's fraud claim was filed on November 29, 1982, it is timely. The district court did not, and neither do we, address whether the fraud claim has merit.

### B.

■ Although persuaded that the appellant's claim sounded primarily in fraud, the district court felt obligated to address the pleaded claim of breach of an oral fee-splitting contract. As will be discussed *infra*, it held that the contract was unenforceable as violative of public policy.

The Ohio Supreme Court applies § 188 of the Restatement (Second) of Conflict of Laws[3] to contract disputes where, as here, the parties did not expressly designate the

  (g) ease in the determination and application of the law to be applied.

**3.** Restatement (Second) of Conflict of Laws § 188 states:

Law Governing in Absence of Effective Choice by the Parties
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contracts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
  (a) the place of contracting,
  (b) the place of negotiation of the contract,
  (c) place of performance,
  (d) the place of subject matter of the contract, and
  (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
These contracts are to be evaluated according to their relative importance with respect to the particular issue.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

law of a particular jurisdiction to govern any disputes. *Gries Sports Enterprises v. Modell,* 15 Ohio St.3d 284, 287, 473 N.E.2d 807 (1984), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). Application of § 188 led the district court to conclude that the validity of plaintiff's contract claim should be determined under Pennsylvania law. The purpose of the agreement was to provide representation for clients in Pennsylvania; and the place of performance was clearly Pennsylvania. Moreover, because this was a service contract, Ohio trial courts would apply § 196 of the Restatement of Conflicts. In pertinent part, that section states:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered. . . .

Comment A to § 196 states that "[t]he rule applies to contracts with . . . lawyers. . . ." We agree with the district court that Pennsylvania law applies to the contract dispute.

■ Purporting to apply Pennsylvania law to Macurdy's contract claim, but failing to cite any Pennsylvania authority, the district court held that the Model Code of Professional Responsibility prohibits fee splitting arrangements made on a percentage basis without consideration of work performed. The court summarily concluded that the contract "patently violates the ethical canons," and that Pennsylvania courts would apply the rigorous public policy doctrine of denying judicial enforcement of "any contract which is violative of established policy. . . ." Accordingly, the court dismissed Macurdy's contract claim.

The question whether Pennsylvania courts would treat this fee splitting agreement as prohibited by the Model Code of Professional Responsibility and, for that reason, bar its enforcement on public policy grounds, is unsettled and uncertain because Pennsylvania authority dealing with these issues is inconsistent.

Model Code of Professional Responsibility DR 2–107(A) [4] provides, in pertinent part:

> Division of Fees Among Lawyers.
> (A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his firm or law office, unless:
> (1) The client consents to employment of the other lawyer after full disclosure that a division of fees will be made.
> (2) The division is made in proportion to the services performed and responsibility assumed by each.
> (3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

Appellant argues that he performed substantial professional services on each of the cases turned over to appellee, including drafting and filing complaints, advancing costs and expenses, obtaining medical bills and reports, taking some depositions, conferring with clients, and conducting some settlement negotiations, suggesting inferentially that the "50–50" fee splitting arrangement in this case does not offend DR 2–107(A).

Appellees respond that the fee splitting contract is based upon the traditional contingent fee arrangement, and does not provide for a division of responsibilities in the six cases. Moreover, appellant has admitted that he kept no time records reflecting the work he claims to have done on any of the files.

The district court did not address the plaintiff's argument that the fee assignment substantially complied with the divi-

---

**4.** By Order, the Pennsylvania Supreme Court adopted the Code of Professional Responsibility effective February 27, 1974. The Code was superseded by the Model Rules of Professional Conduct effective April 1, 1988, 204 Pa.Code Chapter 81. The Pennsylvania Supreme Court indicated that misconduct on or before March 31, 1988 would continue to be governed by the Code of Professional Responsibility. *See Weir v. Estate of Ciao,* 521 Pa. 491, 556 A.2d 819, 823 n. 1 (1989); *Davis v. Pittsburgh Nat. Bank,* 120 Pa.Cmwlth. 453, 548 A.2d 1326, 1327 n. 2 (1988).

sion of services requirement of DR 2–107(A)(2), except to note that

> [u]nder the apparently bargained terms, the amount Macurdy was to receive from Defendants was arbitrarily fixed and bore no relation to the amount of work Macurdy performed on any given client matter.

701 F.Supp. at 137.

We do not think, considering the district court's opinion as a whole, that the court was making a finding of fact that appellant did not do the work on each file he claimed to have done, or that, even if he did, the intent of the parties in forming the contract was to divide attorney fees without regard to the division of work and responsibility, or that, in all events, the work appellant claimed to have done would not justify a "50–50" division of fees. Such findings of fact would, in any cases preclude summary judgment since they are material issues in the case. The focus of the district court's attention was upon the question whether, as a general proposition, all agreements to split fees violate the Model Code of Professional Responsibility and are therefore contrary to public policy and unenforceable.

Our research discloses several Pennsylvania trial court cases on point, and several appellate and supreme court cases addressing related issues. If those cases demonstrate anything, they demonstrate that the district court should not have assumed it to be settled in Pennsylvania that the agreement in this case necessarily violated DR 2–107(A), or that a Pennsylvania court in a civil action not involving attorney discipline would deny enforcement of the agreement and all other judicial relief on grounds of public policy even if the court found that the agreement violated the Code.[5]

Although the lack of clear direction from Pennsylvania courts does not preclude our duty to decide the question, we conclude that we need not reach the issue because, on this record, we are unable to determine whether enforcing the oral agreement in this case would violate the Code. As we have said, the Model Code of Professional Responsibility prohibits fee splitting only where the division "is [not] made in proportion to the services performed and the responsibility assumed by each" lawyer. However, it does not follow from the mere fact that these attorneys agreed to divide fees equally that their agreement was in violation of the Code. The Code prohibits disproportionate *division* of fees, it does not prohibit the *agreement* to divide. The district court did not determine whether the pleadings, affidavits, depositions, exhibits, and related papers considered in connection with the motion for summary judgment demonstrate that there is no genuine issue of material fact about whether the

---

**5.** One trial court case is specifically on point. *Foote v. Shapiro*, 6 Pa. D. & C. 3d 574 (Lehigh 1978) (holding that a contract between two attorneys cannot be deemed unenforceable merely because the contract or contemplated conduct violates the disciplinary rules of the Code of Professional Responsibility). *Accord Fabricius v. Freeman*, 466 F.2d 689, 692 (7th Cir.1972); *Watson v. Pietranton*, —— W.Va. ——, 364 S.E.2d 812, 815–16 (1987) (cites *Foote*). *But see Flowers v. Shein & Brookman, P.A.*, 9 Phila. 145 (1983) (treating Code violations more seriously). *See also Davis v. Pittsburgh Nat. Bank*, 120 Pa. Cmwlth. 453, 548 A.2d 1326, 1329 (1988) ("violations of the Code are not the proper subject for consideration of either the common pleas or intermediate appellate courts of the Commonwealth").

Finally, numerous appellate cases discuss public policy and judicial treatment of attorney ethical violations in a nondisciplinary context. *See e.g., Feld & Sons, Inc. v. Pechner, Dorfman, Wolfee, [sic: Wolffe] Rounick, & Cabot*, 312 Pa.

Superior Ct. 125, 458 A.2d 545, 554 (1983) (addresses violations but, after extensive discussion, declines to apply *in pari delicto*); *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 252 Pa.Super. 553, 382 A.2d 1226, 1231 (1977) (avoids issue whether lower court has jurisdiction to hear a claim involving an alleged violation of the Code), *order reversed*, 482 Pa. 416, 393 A.2d 1175, 1184 (1978) (finding "a departure from '[r]ecognized ethical codes' 'significant in evaluating the nature of [an attorney's] conduct' "), *cert. denied*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979); *American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568, 571 (1978) ("In Pennsylvania, the Canons of the Code of Professional Responsibility have the force of statutory rules of conduct for attorneys"); *Peyton v. Margiotti*, 398 Pa. 86, 156 A.2d 865 (1959) (discussion of *in pari delicto* and for agreement that violates public policy); *Waychoff v. Waychoff*, 309 Pa. 300, 163 A. 670 (1932) (plaintiff layman's contract with attorney unenforced because violative of public policy).

division of work and responsibilities on the six cases was sufficient to warrant a "50–50" division of the fees. Rather, the district court terminated its inquiry upon finding an "improper agreement" and consequently it made no finding whether a "50–50" split might have complied substantially with DR 2–107. As the Supreme Court of Washington noted in *McNeary v. American Cyanamid Co.*, 105 Wash.2d 136, 712 P.2d 845, 848 (1986) (en banc):

> [An] agreement [to split fees] does not necessarily violate CPR DR 2–107. We agree with the Oregon Court of Appeals that "where there is a 'true division of services and responsibility,' a specific agreement to divide a contingency fee between associating attorneys may be enforced, even though it is claimed that the division is not directly proportional to the work performed by each." *Fitzgibbon v. Carey* [70 Or.App. 127, 688 P.2d 1367 (1984) ] [citations omitted]. Therefore, where the trial court finds a substantial division of services or responsibility, the agreed division should control. *See Breckler v. Thaler*, 87 Cal.App.3d 189, 151 Cal.Rptr. 50, 55 (1978).

712 P.2d at 848. Absent any clear direction from Pennsylvania to the contrary, we find *McNeary*'s reasoning applicable and persuasive.

The case must be remanded for development of a fuller record and additional findings by the district court on the controverted division of work issue.

### C.

■ In their brief on appeal, appellees also urge the defense of accord and satisfaction. Accord and satisfaction is an affirmative defense. Rule 8 of the Federal Rules of Civil Procedure provides:

> (c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction ... and any other matter constituting an ... affirmative defense....

As Wright & Miller notes,

> Generally, a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case.

This proposition has been announced by numerous federal courts in cases involving a variety of affirmative defenses, including accord and satisfaction....

5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1278, (1969).

In this case the defendants waited almost a year before filing their answer and almost nineteen months before raising the issue of accord and satisfaction in their motion for summary judgment. Plaintiff-appellant has been prosecuting this case for a number of years, and to allow the defendants to raise this affirmative defense initially at the summary judgment motion would violate Rule 8(c) and unfairly prejudice the plaintiff, which is why the rule requires that such a defense be asserted in the answer. We hold that this defense has been waived.

### D.

■ Finally, appellees also assert that the oral fee splitting agreement is unenforceable because it violates the statute of frauds. It is undisputed that oral contracts conceivably capable of performance within one year of their making fall outside of the writing requirement of the statute of frauds. In this case it is entirely conceivable that all of the lawsuits could have been settled the day following the parties' agreement to split fees, and certainly within one year. The statute of frauds would therefore not bar enforcement of this alleged oral fee splitting agreement.

### III.

For the foregoing reasons, the summary judgment is VACATED.